UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HERMES JUNIOR VALERO AGUIAR (A-Number: 241-829-865),

Petitioner,

v.

CHRISTOPHER CHESTNUT, *et al.*,

Respondents.

Case No. 1:26-cv-5213-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Hermes Junior Valero Aguiar, a citizen of Venezuela, entered the United States during the summer of 2022 without inspection and was detained by immigration authorities shortly after. These authorities released him into the United States on his own recognizance. He petitioned for asylum on June 30, 2023, and was granted temporary protected status from October 23, 2024, to April 2, 2025. On June 20, 2026, ICE re-detained petitioner after he was arrested by local authorities, and he has been detained since that date without a bond hearing. Proceeding through counsel, petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates procedural due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen of Venezuela, entered the United States in June or July of 2022 without inspection. ECF No. 8-1 at 2. On July 14, 2022, immigration authorities detained him

and then released him on his own recognizance. *Id.*; ECF No. 8-2 at 35. He applied for asylum on June 30, 2023, and was granted temporary protected status, which expired on April 2, 2025. ECF No. 1 at 2; ECF No. 8-1 at 2. Petitioner's removal case was dismissed on January 26, 2025. ECF No. 8-1 at 2.

From July of 2022 until his detention, petitioner lived in Herriman, Utah with his wife and two minor children and was stably self-employed. ECF No. 1 at 3. Petitioner has a valid, Real ID-compliant, Utah driver's license. ECF No. 8-1 at 3. There is no allegation or evidence that petitioner has violated any of the terms of his release.

On June 14, 2026, petitioner was at a friend's house when a domestic dispute occurred. ECF No. 1 at 3. When law enforcement arrived, petitioner was arrested on suspicion of attempted rape, attempted sexual abuse, assault, lewdness in the presence of a child, and property damage. ECF No. 8-2 at 7-9. The prosecutor's office has not filed charges against petitioner for any crime stemming from this dispute.[1] *See* ECF No. 8 at 2. On June 20, 2026, petitioner was re-detained by ICE while he was in local custody. ECF No. 8-1 at 2. Petitioner has been detained since that day without a bond hearing. ECF No. 1 at 3.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of

---

[1] Although respondents provide no explanation in their brief as to why charges have not been filed, the police report indicates that law enforcement were unable to interview the alleged victims. *See* ECF No. 8-2 at 27. The last attempted contact mentioned in the police report occurred on June 29, 2026. *See id*. An officer also wrote in the report that, on June 30, 2026, the case was sent to the prosecutor's office for review and "a decision on charges." *Id*. at 26. There is no indication in the record whether the prosecutor's office has declined to file charges or is still reviewing the matter.

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without individualized consideration of whether he poses a flight risk or a danger violates the Due Process Clause. ECF No. 1 at 24. Respondents counter that petitioner is mandatorily detained under 8 U.S.C. § 1225(b) as an applicant for admission. ECF No. 8 at 1. Although respondents advance that ground for detention—which has been consistently rejected by courts in this District, *see, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025)—their answer is focused on convincing the court to order a bond hearing instead of immediate release. *See* ECF No. 8 at 2-3. In doing so, respondents acknowledge that the court will analyze this procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Id.* In fact, respondents concede that petitioner has a "private interest in freedom from restraint" that is "substantial" under *Mathews*. *Id.* at 3.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).

Petitioner is no different. He was released into the United States in July 2022. ECF No. 8-1 at 2. Petitioner remained out of custody, living in the United States with his wife and children, until June 2026. *Id.* There are no allegations that he violated any of the terms of his release. During that time, petitioner applied for asylum, a petition that is still pending. *Id.* Immigration authorities dismissed petitioner's removal case. *Id.* Petitioner received temporary protected status, which expired in April 2025. *Id.* Petitioner obtained a valid Utah driver's license and has been steadily self-employed. ECF No. 1 at 3; ECF No. 8-1 at 3. I agree with respondents, ECF No. 8 at 3, that petitioner's initial release and time out of custody have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. As respondents acknowledge, ECF No. 8 at 3, this requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, as conceded by respondents, petitioner has a significant private interest in his continued release. ECF No. 8 at 3. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release over almost four years of release on his own recognizance in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondents necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id.* On the contrary, the fact that the

government maintains that petitioner is subject to mandatory detention and has denied him a bond hearing, while also claiming that the court should grant petitioner "an individualized bond hearing before an IJ," ECF No. 8 at 2, indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Here again, respondents agree that a bond hearing would allow them "to develop the factual record" and apply a "robust but ordinary process" but has refused to prove one. ECF No. 8 at 1, 3. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents' filing demonstrates that it would not bear any additional burden as a result of providing a bond hearing. *See* ECF No. 8 at 3. In fact, respondents' answer focuses on convincing the court to order a bond hearing rather than immediate release. *Id*.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 25. As noted above, respondents argue that the court should order a bond hearing. *See* ECF No. 8 at 2-3.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the

Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, respondents do not explain in what way there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. As noted, there is no evidence that petitioner has violated the terms of his release. Between July 2022 and June 2026, petitioner did not commit any crime. *See* ECF No. 8-1 at 2-3; ECF No. 8-2 at 33-39. Moreover, as noted, petitioner has a pending asylum application, he was previously granted temporary protected status that expired in April 2025, and his removal case has been terminated. *See* ECF No. 1 at 2; ECF No. 8-1 at 2.

Petitioner was arrested by local authorities on June 14, 2026, on suspicion of serious crimes. ECF No. 8-2 at 38. However, as noted, the prosecutor's office has not filed any charges in connection with that arrest. *See* ECF No. 8 at 2. Indeed, respondents do not provide any argument regarding this fact, and the record reveals that petitioner's case was sent to the prosecutor's office on June 30, 2026, for "a decision on charges," but there is no update regarding that decision. *See* ECF No. 8-2 at 26.

In analogous situations, courts have held that while an arrest for certain crimes subjects an individual to mandatory detention under 8 U.S.C. § 1226(c), such detention becomes unconstitutional after prosecutors decline to bring charges stemming from the arrest. *See E.C. v. Noem*, No. 2:25-cv-1789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) ("And if § 1226(c) mandates [p]etitioner's detention, with no regard for the fact that he was acquitted of all criminal charges through the procedural protections provided in the underlying criminal proceedings, that provision would be unconstitutional as applied to [p]etitioner."); *Singh v.*

*Chestnut*, No. 1:26-cv-0546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) ("As [p]etitioner notes, however, requiring mandatory detention because of a mere arrest for which prosecutors concluded they did not have sufficient evidence to charge [p]etitioner with a crime, raises serious due process concerns.").

I am persuaded by this reasoning. Although petitioner was arrested approximately six weeks ago, he has not yet been charged with any crime despite the prosecutor's office having been in contact with local police. *See* ECF No. 8-2 at 26. Respondents have provided no update on the status of the prosecutor's decision. *See id*. Accordingly, under the circumstances, it appears that prosecutors presently do not have sufficient evidence to charge petitioner with a crime.

Moreover, ICE seemingly chose to re-detain petitioner while he was in local custody. *See* ECF No. 8-1 at 2. Yet respondents have provided no explanation as to why they were unable to first provide him with a pre-deprivation hearing. Indeed, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody. *See J. O. J.L. v. Blanche*, No. 1:26-cv-4142-DAD-JDP, 2026 WL 1745732, at *4 (E.D. Cal. June 17, 2026), *report and recommendation adopted*, 2026 WL 1832766, at *1 (E.D. Cal. June 25, 2026); *Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026); *Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026). Respondents have also had petitioner in custody for over a month, and nearly three weeks since he filed the present petition, and yet they have not provided him with a post-deprivation bond hearing as required by due process.

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing, and has failed to provide a timely post-deprivation hearing, despite its claim that such a hearing strikes the proper constitutional balance. *See* ECF No. 8 at 3. Petitioner's due process rights have been violated such that the appropriate

relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

Accordingly, I recommend that petitioner be released.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 241-829-865) from their custody on the same conditions as his prior release. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: July 27, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE